IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MELVIN L. DOVE, JR.,            )
                                )
          Plaintiff,            )
                                )
     v.                         )          1:11CV585
                                )
UNITED PARCEL SERVICE, INC.,    )
and UNITED PARCEL SERVICE CO.,  )
                                )
          Defendants.           )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, Jr., Chief Judge**

Presently before this court are the Motions for Summary

Judgment filed by Defendant United Parcel Service, Inc. ("UPS")

(Doc. 24) and Defendant United Parcel Service Co. ("UPS, Co.")

(Doc. 23).  Plaintiff Melvin L. Dove, Jr., has filed a Response

(Doc. 34),[1] and UPS and UPS Co. have each filed a reply (Docs. 39

---

[1] Plaintiff's Response was not timely filed.  The deadline
for filing the Response was first extended to July 26, 2012 (see
Text Order, July 2, 2012) and was then again extended to August
3, 2012 (see Text Order, July 24, 2012).  A consent motion (Doc.
32) was then again entered by Plaintiff, seeking to have the
deadline extended to August 6, 2012.  On August 7, 2012,
Plaintiff's counsel filed a contested motion for an additional
extension (Doc. 33) to August 10, 2012, on which date the
Response was filed.  While grounds may exist to deny Plaintiff's
two latest requests for an extension, this court has nonetheless
considered Plaintiff's Response so as to allow it to adequately
judge the merits of Defendants' motions.  See Custer v. Pan Am.

and 40, respectively.)  For the reasons set forth herein,

Defendants' Motions will be granted.

I.   **BACKGROUND**

Plaintiff originally filed this Complaint (Doc. 4) in

Guilford County Superior Court on July 11, 2011.[2]  Defendants

filed a Notice of Removal (Doc. 1) with this court on July 21,

2011, and the case has since proceeded in this court.

Plaintiff's Complaint alleges four counts.  Count One

alleges racial discrimination in violation of 42 U.S.C.

§ 2000e-2(a) and 2000e-16.  (Complaint ("Compl.") (Doc. 4) at

¶¶ 79-91.)  Count Two alleges intentional discrimination under

_____

Life Ins. Co., 12 F.3d 410, 416 (4th Cir. 1993) ("Although the
failure of a party to respond to a summary judgment motion may
leave uncontroverted those facts established by the motion, the
moving party must still show that the uncontroverted facts
entitle the party to 'a judgment as a matter of law.'").
Ultimately, Plaintiff's motions for an extension are moot due to
this court's finding that Defendants are entitled to summary
judgment on all claims even with consideration of Plaintiff's
Response.

[2]  Plaintiff filed an EEOC charge alleging violations of
Title VII in January 2010, and UPS obtained a no-cause dismissal
on the merits. (Def. UPS Co.'s Mem. of Law in Supp. of Mot. for
Summ. J. ("Def. UPS Co.'s Mem.") (Doc. 27) at 8.)  "Plaintiff's
attorney requested that the EEOC reconsider its decision and
submitted over 70 pages of additional arguments and documentary
evidence for the EEOC to consider.  After reviewing the
additional documentation submitted by Plaintiff, the EEOC re-
affirmed its prior no-cause determination."  (Id.) (citation
omitted).

contract in violation of 42 U.S.C. § 1981.  (Id. ¶¶ 92-106.)

Count Three alleges a violation of the Americans with

Disabilities Act of 1990, 42 U.S.C. § 12117(a).  (Id. ¶¶ 107-

119.)  Count Four states a common law claim for negligent

infliction of emotional distress. (Id. ¶¶ 120-137.)

Plaintiff is an African American employee of UPS, where he

has a "seniority date" of 1999, although he first worked for UPS

in 1988.  (Compl. ¶¶ 5, 10.)  Plaintiff claims that UPS

discriminated against him and other UPS employees by exclusively

assigning African Americans to a route including North Carolina

A&T University and adjacent areas in Greensboro, NC.  (Id. ¶¶ 6,

8.)  This route is known as "[R]oute 73E."  (See id. ¶ 12.)

Plaintiff claims that the Greensboro Police Department has

classified areas within this route as "high crime" areas and

that white UPS drivers are not given similar routes in high

crime areas.  (Id. ¶¶ 7-8.)  Plaintiff also states in his

Complaint, however, that he "bid" on Route 73E beginning in

2006.[3]  (Id. ¶ 12.)  UPS drivers with seniority are allowed to

"bid" on routes that they wish to drive full time.  (See Def.

---

[3]  Plaintiff stated in his deposition that he first bid on
Route 73E in 2005 or 2006. (Def. UPS's Mem. of Law in Supp. of
Mot. for Summ. J. ("Def. UPS's Mem."), App. Tab 1, Deposition of
Melvin L. Dove, Jr. ("Dove Dep.") (Doc. 28-2) at 20.)

-3-

UPS Co.'s Mem. (Doc. 27) at 4.)[4]  "The most senior [driver] gets
to select his or her route first, and then the selection
progresses in seniority order."  (Id.)  In addition to drivers
who bid on permanent routes, UPS also has "cover" drivers who
temporarily cover the routes of bid drivers when they are
unavailable to work.  (Id.)  When bidding on a route, drivers
are familiar with the area that the route covers and also with
the truck assigned to that route, as individual trucks are
permanently assigned to each particular route.  (Id.)  So when
Plaintiff originally bid on Route 73E in 2005 or 2006, he was
familiar with the route and the truck assigned to it. (Dove Dep.
(Doc. 28-2) at 32-33.)  Plaintiff also acknowledges that the
same truck has been assigned to Route 73E since he began driving
it in 2005 or 2006.  (Id.)

    In addition to alleging that Route 73E is in a high crime
area and that the truck assigned to this route is in poor
condition, Plaintiff also claims that he has had "difficulty
with deliveries" on the North Carolina A&T campus because the
packages were not properly "addressed to the recipients," thus
making Plaintiff less "efficient and effective."  (Compl.

_____

    [4] All citations in this order to documents filed with the
court refer to the page numbers located at the bottom right-hand
corner of the documents as they appear on CM/ECF.

(Doc. 4) ¶¶ 7, 9, 13.)  Plaintiff also claims that management
has failed to work out a "pick up point" at A&T that is similar
to the pick up point white drivers have available to them at the
route covering the University of North Carolina at Greensboro.
(Id. ¶ 15.)  Mr. Dove further claims that he has been
consistently scheduled in a way that causes him to miss his
lunch period in violation of the applicable Collective
Bargaining Agreement.[5]  (Id. ¶ 16.)  Mr. Dove alleges that he
made complaints regarding these issues to his superior, but that
no corrective action was taken.  (Id. ¶¶ 18-19.)

    In 2008, Mr. Dove suffered a back injury and was forced to
miss ninety-four days of work that year.  (Id. ¶ 24.)  Mr. Dove
claims that the truck assigned to Route 73E was a "substantial
and contributing factor" to his lower back problems. (Id. ¶ 49.)
In his deposition, Mr. Dove stated that his problems with the
truck only arose when the assigned truck was unavailable and he
was temporarily assigned a replacement truck.  (Dove Dep. (Doc.
28-2) at 33.)

---

[5] The terms and conditions of Mr. Dove's employment with UPS
are governed by the Collective Bargaining Agreement between UPS
and the Teamsters. (See Def. UPS Co.'s Mem. (Doc. 27) at 4.)

On Thursday, September 25, 2008, Mr. Dove arrived at work and found that the truck normally assigned to Route 73E was undergoing maintenance and that he would be forced to drive a replacement vehicle. (See Pl.'s Resp. to Defs.' Mots. Summ. J. ("Pl.'s Resp.") (Doc. 34) at 4.) Mr. Dove felt that this replacement vehicle placed him at significant risk of re-injuring his back, and he thus requested that he be assigned another route or be given other work. (Id.) At this time, Plaintiff had been medically cleared and had no restrictions on his work activities.[6] Plaintiff's supervisor, Shawn Prairie, then advised Mr. Dove not to return to work until he had obtained a note stating that he was cleared to drive any and all UPS vehicles. (Id.) Mr. Dove therefore went home and did not come to work the following day, Friday, September 26, 2008.[7] (Id. at 5.) Mr. Dove was then terminated for gross

---

[6] Mr. Dove admits that he did not receive a recommendation from his doctor to use a "high seat with a lumbar roll" until October 21, 2008. (See Compl. (Doc. 4) ¶ 57.)

[7] Defendants characterize this dispute by stating that Plaintiff "refused" to run his assigned route, while Plaintiff argues that he merely "requested" not to have to operate the replacement vehicle. (See Pl.'s Resp. (Doc. 34) at 22.) Regardless, as discussed below, either characterization serves as a sufficient non-discriminatory reason for terminating Plaintiff.

insubordination for refusing to drive his assigned route.[8]  (Id.
at 6.)

Plaintiff claims that he was essentially forced to choose
between refusing to work (and thus being terminated) or working
in a dangerous environment.  (See Compl. (Doc. 4) ¶¶ 32, 34.)
Plaintiff claims that UPS utilized this pretext to disguise its
"real and true motive of terminating him for reasons of racial
animus."  (Id. ¶ 34.)  Mr. Dove claims that "[r]acial animus
toward African American package drivers was demonstrated by UPS
supervisors when they failed to respond to a 'noose hanging'
symbol in a customer's yard designed for African Americans and
again when there was no response to a 'noose hanging' symbol
that was placed in the Greensboro Package Center where Dove
worked."  (Id. ¶ 73.)

Mr. Dove filed a grievance, and on November 3, 2008, UPS
offered to allow Plaintiff to resume employment if he admitted

_____

[8] There is a limited factual dispute as to who made the
decision to fire Mr. Dove. (See Pl.'s Resp. (Doc. 34) at 26-27.)
Specifically, Plaintiff claims that Mr. Toby Akers' Declaration
conflicts with that of his supervisor, Shawn Prairie, in that
Mr. Akers states that he instructed Mr. Prairie to fire
Plaintiff, whereas Mr. Prairie states in his declaration that
Mr. Akers fired Plaintiff.  (See id.)  Because Mr. Dove has not
met his burden of demonstrating that UPS' proffered reason for
his termination is a pretext for discrimination, as discussed in
more detail below, any ambiguity in this regard is
inconsequential for purposes of this order.

that he was wrong in not working on September 25, 2008.  (Id. ¶ 58.)  Mr. Dove is still employed with UPS and is currently a "bid" driver on a route other than Route 73E.  (Pl.'s Resp. (Doc. 34) at 7.)

Plaintiff seeks the following in relief: compensatory and punitive damages in an amount in excess of $10,000; reinstatement with backpay for UPS' alleged wrongful termination of Plaintiff; that UPS be enjoined from continuing its alleged discriminatory practices against African Americans, including Plaintiff; and that Plaintiff be awarded attorneys' fees and costs.  (See Compl. at 15.)

## II.  LEGAL STANDARD

Summary judgment is appropriate where an examination of the pleadings, affidavits, and other proper discovery materials before the court demonstrates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56.  The moving party bears the burden of initially demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party has met that burden, then the nonmoving party must persuade the court that a genuine issue remains for trial by "go[ing] beyond the pleadings" and introducing evidence that establishes "specific facts showing

-8-

that there is a genuine issue for trial." Id. at 324 (internal quotation marks omitted).

In considering a motion for summary judgment, the court is not to weigh the evidence, but rather must determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The court must view the facts in the light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Id. at 255. A mere factual dispute is insufficient to prevent summary judgment; the fact in question must be material, and the dispute must be genuine. Fed. R. Civ. P. 56; Anderson, 477 U.S. at 247-48. Material facts are those facts necessary to establish the elements of a party's cause of action. Anderson, 477 U.S. at 248. A dispute is only "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

## III. ANALYSIS

### a. Claims Against UPS Co.

Initially, this court notes that Plaintiff has filed claims against both UPS and UPS Co. (See Compl. (Doc. 4).) As Defendants note, Plaintiff is in fact an employee of UPS, and "other than a single allegation pertaining to [UPS Co.]'s state

-9-

of incorporation and business conducted in North Carolina, the allegations in Plaintiff's Complaint pertain only to UPS." (Def. UPS Co.'s Mem. (Doc. 27) at 2.) Furthermore, Defendants note that Plaintiff has never been an employee of UPS Co. and that all of the actions that form the basis of this lawsuit were taken by UPS employees, not UPS Co. employees. (Id.)

In his Response, Plaintiff makes no reference to UPS Co.'s arguments in this regard. Accordingly, Plaintiff's arguments against UPS Co. have been abandoned and summary judgment in favor of UPS Co. is appropriate. See Rogers v. Unitrim Auto & Home Ins. Co., 388 F. Supp. 2d 638, 641 (W.D.N.C. 2005)("[A]s the Defendants point out in their Reply, the Plaintiffs have made no argument concerning their bad faith claim, effectively abandoning it as well.").

### b. Claims Against UPS

Turning now to Plaintiff's claims against his employer, UPS, Defendants argue that Plaintiff has failed to raise a triable issue of fact with regard to any of his claims. This court will address each claim in turn.

### i. Title VII and § 1981 Racial Discrimination Claims

Defendants first note that a plaintiff is barred from bringing a Title VII claim unless he has filed a charge of

-10-

discrimination with the EEOC within 180 days of the alleged
discrimination.  See 42 U.S.C. § 2000e-5(e)(1); Jones v. Calvert
Group, Ltd., 551 F.3d 297, 300 (4th Cir. 2009); Bryant v. Bell
Atl. Md., Inc., 288 F.3d 124, 132 (4th Cir. 2002) ("Before a
plaintiff has standing to file suit under Title VII, he must
exhaust his administrative remedies by filing a charge with the
EEOC.").  Because Plaintiff has acknowledged that he was
familiar with the nature of Route 73E when he originally bid on
it in 2005 or 2006, Defendants argue that the 180-day period
expired long before Plaintiff filed his EEOC complaint in
January 2010.  (See Def. UPS's Mem. (Doc. 28) at 5, 7.)

   In response, Plaintiff argues that his "EEOC charge
regarding his termination and the retaliation, discrimination
and hostile work environment by UPS was filed with the EEOC in
January 2010, well within 180 days of the September 30, 2009
resolution meeting regarding his September 29, 2008
termination." (Pl.'s Resp. (Doc. 34) at 6.)  Plaintiff thus
appears to cast his claim as one only alleging termination based
on racial discrimination.

   Regardless, as Defendants note, the time limit runs from
the date of termination, not from the date any grievance is
finally resolved.  See Howard v. U.N.C. Health Care Sys., No.
1:10CV47, 2010 U.S. Dist. LEXIS 141837, at *9 n.2 (M.D.N.C.

-11-

Sept. 7, 2010) ("[T]he filing of a grievance concerning termination does not toll the 180-day limitation."). Further, "no lack of knowledge or information prevented [Plaintiff] from filing [his] EEOC charge by [the expiration of the 180-day period], as required by law." Id. at *9. Finally, in any event, Plaintiff is barred from bringing a wrongful termination claim because such a claim was not included in his EEOC complaint. See Bryant, 288 F.3d at 132; (Dove Dep. (Doc. 28-2) at 117-121.) Plaintiff's Title VII claims are thus barred and should be dismissed.

Even if Plaintiff's Title VII claims were not time-barred, however, they would still be dismissed, as Plaintiff has failed to establish a prima facie case. "[I]n order to establish a prima facie case of racial discrimination . . . under either Title VII or section 1981, [a plaintiff must] show: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action . . . ; and (4) that similarly-situated employees outside the protected class received more favorable treatment." White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004). The typical requirements for a showing of adverse employment action are "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities

-12-

for promotion." Boone v. Goldin, 178 F.3d 253, 255 (4th Cir. 1999); see also id. at 256 (holding that reassignment can only qualify as an adverse employment action if it had some "significant detrimental effect" on the plaintiff).

In this instance Plaintiff's claims relating to his route assignment and vehicle assignment fail because Plaintiff himself bid on Route 73E and he knew of the route's vehicle. Plaintiff admits that he has more seniority than the driver that currently runs the route closest to his home, and that he could thus drive that route if he so chose. (Dove Dep. (Doc. 28-2) at 42.) He also admits that his home route is safer than Route 73E. (Id. at 42-43.) Plaintiff has bid on Route 73E repeatedly, including in 2010 and 2011. (Id. at 48-49.)[9]

---

[9] In response to the question, "Why haven't you ever elected to bid off the route?" Plaintiff responded:

> The time that I've been there on that route and chose not to leave is because I've been trying to get the route fixed as far as the time allowance, service the customers, you know, and I don't think management really appreciates that or they feel the same way, so --. . . . because I think the next driver that comes behind me is going to be a black driver as well, so I think I've took it upon myself to try to stay there as long as I can or could to try to fix that route so that the next driver comes behind will have a better day.

(Dove Dep. (Doc. 28-2) at 50-51.) Additionally, Plaintiff states that "everyone that gets trained on A&T is black." (Id. at 41.)

-13-

In his Response, Plaintiff attempts to recast these claims by stating that he is alleging that UPS only trains African Americans to be cover drivers for Route 73E. (See Pl.'s Resp. (Doc. 34) at 15). Even if that were the case, Plaintiff would not be able to seek redress for this policy, as he was not a cover driver for Route 73E. Plaintiff also seems to claim in response that UPS continues to use Plaintiff as a cover driver for Route 73E now that he is a bid driver on a different route and that this constitutes employment discrimination. (See id. at 7.) Plaintiff does not state in his briefing the number of times he has been required to run Route 73E as a cover driver. Even assuming Plaintiff has been required to cover Route 73E since bidding on a different route, this would not constitute an adverse employment action sufficient to survive summary judgment. See Boone, 178 F.3d at 255.

Turning to Plaintiff's claims under § 1981, Defendants argue that Plaintiff's claims with regard to "route assignment" and "vehicle assignment" are barred by the applicable four-year statute of limitations. (Def. UPS's Mem. (Doc. 28) at 4-5, 7); see also James v. Circuit City Stores, Inc., 370 F.3d 417, 421 (4th Cir. 2004). As noted above, Plaintiff would have become aware of any discriminatory actions by Defendants with regard to

Route 73E when he originally bid on the route in 2005 or 2006. These claims are thus barred.

With regard to Plaintiff's claims concerning his termination, this court finds that Plaintiff is unable to establish a prima facie case sufficient to survive summary judgment. Section 1981 claims are governed by the same evidentiary standards as Title VII claims, and the same elements must be met to establish a prima facie case. See White, 375 F.3d at 295.

Defendants argue that Plaintiff is unable to establish an adverse employment action because he was eventually rehired through a grievance process and is still an employee of UPS. The court need not decide whether Plaintiff's termination and reinstatement constitutes an adverse action, however, because Plaintiff has been unable to allege "different treatment from similarly situated employees outside the protected class." See Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010, aff'd, 566 U.S. ____, 132 S. Ct. 1327 (2012).

In this regard, Defendants note that Plaintiff has not made an allegation of a driver outside the protected class who kept his job after refusing to (or requesting not to) run his designated route. (Def. UPS's Mem. (Doc. 28) at 9.) To the

-15-

contrary, Defendants note that UPS fired a white worker shortly after Plaintiff was fired for exactly the same conduct. (Id.)

Furthermore, even if Plaintiff were able to establish a prima facie case, Defendants have presented a legitimate, non-discriminatory reason for terminating Plaintiff, and Plaintiff has not satisfied his burden of "establish[ing] that [UPS'] proffered reason is a pretext for discrimination." See Okoli v. City of Baltimore, 648 F.3d 216, 222-23 (4th Cir. 2011). Specifically, Defendants have established that Plaintiff was medically released to operate all package cars without restriction in June 2008, and thus his failure to drive his assigned route on the date in question - whether characterized as a refusal to run the route or merely as a request for different work - constituted gross insubordination. Plaintiff's § 1981 claims should therefore be dismissed.[10]

---

[10] Although it is not entirely clear from his Complaint, Plaintiff also appears to have alleged both a retaliation claim and a hostile work environment claim under Title VII and § 1981. Even if Plaintiff were to have sufficiently set out retaliation and hostile work environment charges, they would fail for many of the same reasons as Plaintiff's other claims.

His Title VII retaliation claim would be time-barred for the same reasons as his other Title VII claims. His § 1981 claim would also fail as he would be unable to establish a prima facie case of retaliation. Most obviously in this regard, Plaintiff has not sufficiently alleged protected activity. See Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998). Further, even if Plaintiff were to establish a prima facie case, UPS has carried its burden of presenting legitimate non-discriminatory reasons for the actions of which Mr.

### ii. Plaintiff's ADA Claim

In its Memorandum of Law in Support of its Motion for
Summary Judgment (Doc. 28), UPS raises several meritorious
arguments as to why Plaintiff's ADA claim should be dismissed.
(See (Doc. 28) at 16-18.)  In his Response, Plaintiff fails to

_____

Dove complains.  For example, UPS submits that its firing of Mr. Dove
was due to his gross insubordination in failing to drive his assigned
route. (Def. UPS's Mem. (Doc. 28) at 10.)  Plaintiff has been unable
to carry his burden of showing that Defendants' non-discriminatory
reasons were a mere pretext.

     To state a hostile work environment claim, a plaintiff "must show
that: (1) the harassment was unwelcome; (2) the harassment was based
on his race . . . ; (3) the harassment was sufficiently severe or
pervasive to alter the conditions of employment and create an abusive
atmosphere; and (4) there is some basis for imposing liability on the
employer." Causey, 162 F.3d at 801.  "When analyzing a claim based on
a hostile work environment, the court should look at the totality of
the circumstances and consider 'the frequency of the discriminatory
conduct; its severity; whether it is physically threatening or
humiliating, or a mere offensive utterance; and whether it
unreasonably interferes with an employee's work performance.'" Moss
v. Steele Rubber Prods., Inc., No. 5:07cv76, 2010 WL 1380364, at *5
(W.D.N.C. Mar. 29, 2010) (quoting E.E.O.C. v. Sunbelt Rentals, Inc.,
521 F.3d 306, 315 (4th Cir. 2008)).

     Here, viewed in the light most favorable to Mr. Dove, there is
insufficient evidence that the alleged harassment was either race-
based or "severe or pervasive."  This inquiry looks at the plaintiff's
personal experience, see Honor v. Booz-Allen & Hamilton, Inc., 383
F.3d 180, 190 (4th Cir. 2004), and Mr. Dove has presented little
evidence that any racial comments have ever been directed toward him
within the UPS work environment (see Dove Dep. (Doc. 28-2) at 78-91,
93-94).  Furthermore, as discussed in more detail below, neither
alleged noose incident was directed at Mr. Dove.  In addition, to the
extent Mr. Dove relies on the character of Route 73E or the quality of
its vehicle to support a hostile work environment claim, these
arguments fail for many of the same reasons addressed elsewhere in
this order.

     For all of these reasons, Plaintiff's retaliation and hostile
work environment claims, to the extent they were properly alleged,
should be dismissed.

respond in any way to UPS' arguments.  Plaintiff has thus abandoned this claim and it should be dismissed.  See Rogers, 388 F. Supp. 2d at 641.

Even if Plaintiff had not abandoned his claim, however, this court would still grant summary judgment in favor of Defendants.  While Plaintiff's claim would fail for multiple reasons, e.g., timeliness and lack of sufficient evidence of UPS' failure to accommodate, the most obvious is that Plaintiff has not presented evidence that he is disabled for purposes of the ADA.

To be qualified as disabled for purposes of the ADA, a plaintiff must possess "a physical or mental impairment that substantially limits one or more [of his] major life activities," as compared to someone in the general population. 42 U.S.C. § 12102(1)(A).  A plaintiff's condition must be evaluated at the time of the alleged failure to accommodate. See E.E.O.C. v. Stowe-Pharr Mills, Inc., 216 F.3d 373, 379 (4th Cir. 2000).

In this case, Plaintiff admits that he was medically cleared without restriction at the time of the alleged failure to accommodate (Dove Dep. (Doc. 28-2) at 59-61, 65-67), and he has not otherwise submitted sufficient evidence of a physical

-18-

impairment that substantially limited any major life activity. For this reason alone Plaintiff's ADA claim should be dismissed.

### iii. Plaintiff's negligent infliction of emotional stress ("NIED") Claim

"In North Carolina, to state a cause of action for NIED, 'a plaintiff must allege that (1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress . . . , and (3) the conduct did in fact cause the plaintiff severe emotional distress.'" Baucom v. Cabarrus Eye Ctr., P.A., No. 1:06CV00209, 2007 WL 1074663, at *5 (M.D.N.C. Apr. 4, 2007) (omission in original) (quoting McAllister v. Ha, 347 N.C. 638, 645, 496 S.E.2d 577, 582-83 (1998)).

Plaintiff has not presented sufficient evidence to survive summary judgment on any of these three elements. First, in his Complaint, Plaintiff's NIED claim appears to relate to two alleged instances involving threatening nooses. (See Compl. (Doc. 4) ¶¶ 120-137.) In his Response, Plaintiff appears to slightly modify his claim to rest on UPS' alleged failure to respond to his complaints of harassment. (Pl.'s Resp. (Doc. 34) at 28.) Regardless of which purported facts Plaintiff attempts to rely upon, he has not presented any evidence of any negligent act on behalf of UPS.

-19-

Second, it was not reasonably foreseeable that Plaintiff would suffer severe emotional distress from any of the acts alleged by Plaintiff. With regard to the noose incidents, Plaintiff never saw the noose at the UPS packaging center, and the noose along Route 73E was on a private residence and belonged to a non-UPS customer. (Dove Dep. (Doc. 28-2) at 82-86.) It was thus not foreseeable to UPS that Plaintiff would suffer severe emotional distress from either of these incidents.

Finally, Plaintiff has not alleged that he in fact suffered any severe emotional distress. The only evidence of Plaintiff having any emotional distress comes from his psychiatric care for unrelated issues and Plaintiff's conclusory statement that UPS' racial discrimination "exacerbated an already stressful situation." (Pl.'s Resp. (Doc. 34) at 28.) For all of these reasons, Plaintiff's NIED claim fails.

## IV. CONCLUSION

For all of the reasons set forth herein, **IT IS HEREBY ORDERED** that Defendant UPS Co.'s Motion for Summary Judgment (Doc. 23) and Defendant UPS's Motion for Summary Judgment (Doc. 24) are **GRANTED**. **IT IS FURTHER ORDERED** that Plaintiff's Consent Motion for Extension of Time to Respond to Summary Judgment Motion (Doc. 32) and Plaintiff's Motion for Extension of Time to Respond to Summary Judgment Motion (Doc. 33) are **DENIED** as **MOOT**.

-20-

A Judgment consistent with this opinion will be entered
contemporaneously with this order.

This the 12th day of December, 2012.

_William L. Osteen, Jr._
United States District Judge